## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### *(MIAMI DIVISION)*

| | |
|---|---|
| Republic Metals Corporation, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| Bloomberg, L.P., ) | Judge: |
| ) | |
| Defendant. ) | Magistrate Judge: |
| ———————————————— ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Republic Metals Corporation ("Republic"), by and through its attorneys, alleges

the following against Defendant Bloomberg, L.P. ("Bloomberg"):

### NATURE OF ACTION

1.     Bloomberg attempted to destroy a business that Richard and Jason Rubin spent

over 30 years building.  Bloomberg published reports falsely stating and implying that Republic

participates in a "cocaine money-laundering scheme" involving two of the most violent gangs in

Colombia.  Bloomberg accused Republic of using "drug money" to purchase illegal gold to help

these gangs and others launder money and fund their violent activities.  And, to lend credibility

to its accusations, Bloomberg reported that Republic is being investigated by Colombian and

U.S. agencies for its involvement in this criminal enterprise.

2.     None of it was true.  Republic does not and has never used drug money to

purchase gold, does not and has never participated in a money-laundering scheme, and has no

connection with the violent gangs discussed in Bloomberg's reports.  Moreover, Republic is not

being investigated by Colombian or U.S. agencies for participating in the "cocaine money-

laundering" scheme discussed in Bloomberg's reports.  Bloomberg either knew it was publishing

CASE NO. _____

factually inaccurate statements about Republic or it published those statements with reckless disregard for the truth.

3.      The most glaring example of Bloomberg's irresponsibility is its attribution of the source of statements to Juan Ricardo Ortega, an official with the Colombian DIAN, a tax enforcement agency.  Bloomberg attributed many of its false statements and implications about Republic to Ortega, who Bloomberg claims it interviewed.  However, in response to official inquiries, the DIAN has made clear that no one in its agency, including Ortega, made those specific statements.  Based on letters received from the DIAN, Ortega did not make the accusations against Republic reported by Bloomberg.  Bloomberg apparently fabricated the accusations.

4.      The damage to Republic as a result of Bloomberg's reports is real, substantial and well in excess of $75,000.00, exclusive of interest and costs.  Republic is a private company that was founded by Richard Rubin and is now run by his son, Jason.  A critical component of Republic's success has been its transparency with government agencies and track record for a rigorous commitment to compliance with domestic and international law.  Bloomberg's reports attacked Republic's reputation and created grave concerns among Republic's current and potential clients, as well as financial institutions.  Republic now seeks compensation for the damage Bloomberg caused to Republic's reputation and business, as well as an order requiring Bloomberg to retract its factually inaccurate reports.

## PARTIES

5.      Plaintiff Republic is a Florida corporation with its principal place of business in Miami, Florida.  Republic holds itself to the highest business standards, and has a state-of-the-art legal compliance program.  Republic has spent 30 years establishing and maintaining a spotless reputation with participants in the refinery industry.

CASE NO. _____

6.     At all relevant times, Republic has been a private figure that has not inserted itself into any relevant public issues.   Republic has not sought pervasive involvement in the community in general.   Nor has Republic sought to influence any public discussion regarding current investigations into Colombian cocaine money-laundering schemes.   Prior to the publication of Bloomberg's reports, Republic was not considered a public figure and did not thrust itself into the public spotlight on any relevant issues.

7.     Defendant Bloomberg is a Delaware limited partnership with its principal place of business in New York, New York.   Bloomberg owns and operates Bloomberg News, which is Bloomberg's news division.     Bloomberg owns and operates a news website at www.bloomberg.com.   Bloomberg posted the factually inaccurate reports at issue on its website and Twitter account.

8.     Non-party Andrew Willis ("Willis") is the author of the two reports at issue. Willis is a journalist who covers commodities and Colombian issues for Bloomberg.   At all times relevant to this Complaint, on information and belief, Willis acted as an agent of and for Bloomberg, and Bloomberg is responsible for Willis' actions.

9.     Non-party James Attwood ("Attwood") is the editor of the two reports at issue. Attwood is the team leader of the Latin American Commodities and Energy Group for Bloomberg.   At all times relevant to this Complaint, on information and belief, Attwood acted as an agent of and for Bloomberg, and Bloomberg is responsible for Attwood's actions.

10.     Non-party CI Goldex SA ("Goldex") is a gold exporter based in Medellin, Colombia, which is discussed in Bloomberg's reports.   On information and belief, Goldex is currently cooperating with a preliminary inquiry by the Colombian Attorney General for potential business irregularities.   Republic closed all of its accounts with Goldex in September

CASE NO. _____

2013 after being informed that Goldex was the subject of a preliminary inquiry.  Republic has not done business with Goldex since September 2013

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) based on diversity of citizenship.  This is a civil action between a Florida corporation (Republic), with its principal place of business within the Southern District, and a limited partnership (Bloomberg) considered a resident of either New York or Delaware, and the value of the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

12.     This Court has personal jurisdiction over Bloomberg because: (a) it is registered to do business in Florida and conducts ordinary and substantial business activities in this State; (b) it maintains an office in Florida; (c) on information and belief, it has sold its news subscription service to Florida residents; (d) it knew this State and District was Republic's principal place of business; (e) its tortious conduct targeted a Florida corporation that resides in this State and District; (f) it knew its tortious conduct would injure the reputation of and cause economic injury to Republic, which has its principal place of business in this State and District; (g) it communicated with Republic in this State and District regarding the events underlying this action; and, (h) its defamatory reports were accessible to and read by individuals in this State and District.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because there is no other district in this State in which this action may be brought and Bloomberg is subject to this Court's personal jurisdiction.  Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim asserted herein occurred in or affected this District.  This District is Republic's principal place of business.

CASE NO. _____

## ALLEGATIONS

14.     In May 2014, Bloomberg published two reports falsely and erroneously implicating Republic in a cocaine money-laundering scheme involving two of the most violent gangs in Colombia.  Bloomberg was not reporting on breaking news.  Nor was time of the essence for Bloomberg's reports.  Bloomberg unilaterally decided it wanted to publish the reports and when to publish the reports.  Yet, Bloomberg did not take the time to make sure its reports were accurate.  Bloomberg either intended to publish factually inaccurate reports or it published the reports without taking any steps to confirm their accuracy.  Either way, Bloomberg's actions violated its professional responsibilities and its irresponsibility has caused considerable damage to Republic.

**I.**     **Bloomberg published reports falsely stating and implying that Republic was involved with drug trafficking and money-laundering.**

15.     Bloomberg published two reports about Republic.  Bloomberg published the first on May 23, 2014, and it was titled "Gold Traders Investigated in Colombian Cocaine Laundering."  Bloomberg published the second on May 26, 2014, and it was likewise titled "Gold Traders Investigated in Colombian Cocaine Laundering."  Bloomberg also posted the reports on its Twitter account.  Copies of the reports are attached as Exhibits 1 and 2, respectively.

**A.**     **Bloomberg's reports implicated Republic in a cocaine money-laundering scheme.**

16.     Bloomberg's reports purported to provide details regarding a "cocaine money-laundering scheme" being investigated by the Colombian Attorney General along with the DIAN and U.S. Drug Enforcement Agency ("DEA").  According to Bloomberg, the scheme involved two violent Colombian gangs, a gold exporter (Goldex), and a Miami refinery (Republic).  Bloomberg's reports state that gangs were illegally transporting gold into Colombia and

CASE NO. _____

transferring the gold to Goldex.  Goldex would then ship the gold to the United States where it was purchased by Republic.  Republic, according to Bloomberg, purchased the gold with drug money provided by the same Colombian gangs, thereby completing the "cocaine money-laundering scheme."

17.     The report, as it relates to Republic, is fiction and contains numerous factually inaccurate statements and implications.   First, Bloomberg's reports falsely state that the Colombian Attorney General is investigating Republic for participating in a cocaine money-laundering scheme.  The reports make the following statements:

a.     "Gold Traders investigated in Colombian Cocaine Laundering."   The headline refers to multiple traders.  Republic and Goldex are the only "traders" discussed in the report.  The headline states and implies that Republic is one of the traders being investigated for cocaine laundering.

b.     "Colombia is investigating the possible involvement of gold trading firms and a Miami refinery in a cocaine money-laundering scheme. . ."  Republic is the only Miami refinery discussed in the report.   This sentence states and implies that Republic is being investigated for participating in a cocaine money-laundering scheme.

c.     "Investigators are also looking into the possible involvement of Republic Metals Corp, a refiner in Miami known as RMC. . ."  The only investigation discussed in the report is the investigation into a "cocaine money-laundering scheme" by the Colombian Attorney General.  This sentence states and implies that Republic is being investigated for participating in that scheme.

18.     Second, Bloomberg's reports falsely state that Republic is being investigated by the U.S. DEA.  The reports state the cocaine money-laundering scheme involved shipments of gold to the U.S. and that "the U.S. Drug Enforcement Administration [is] assisting in the probe"

CASE NO. _____

by the Colombian Attorney General. Republic is the only U.S. based company discussed in the report and one of the two companies discussed in connection with the money-laundering scheme. These sentences state and imply that the U.S. DEA is assisting in a probe of Republic.

19.     Third, Bloomberg's reports falsely state and/or imply that Republic uses drug proceeds to purchase contraband gold. The reports state that gold smuggled into Colombia "allegedly was sent via trading firms including CI Goldex SA to the U.S. and Switzerland and bought at inflated prices with drug money. . ." Republic is the only U.S. based firm in the business of purchasing gold discussed in the reports. This sentence states and implies that Republic is purchasing gold with drug money.

20.     Fourth, Bloomberg's reports falsely state and/or imply that Republic participates in money-laundering. The reports make the following statements:

a.      "It's money-laundering, a way of bringing back dollars. . ." Republic and Goldex are the only companies discussed in the report. This sentence states and implies that Republic is one of the companies involved in the money-laundering scheme.

b.      "The alleged gold scheme would be part of money-laundering operations that the Colombian's government's financial intelligence unit estimates at about $11 billion a year." Republic and Goldex are the only companies discussed in the report. This sentence states and implies that Republic is one of the companies involved in the money-laundering scheme.

21.     Fifth, Bloomberg's reports falsely state and/or imply that Republic is connected to drug-related violence in Colombia. The reports state that the Colombian Attorney General's investigation was "part of an effort to end decades of drug-related violence." The reports state that Colombia's Los Urabenos gang and the commander of the FARC "are among traffickers using gold to launder cocaine profit." And, the reports state that "illegal gold mining is a key source of revenue for the FARC, together with returns from cocaine industry."

CASE NO. _____

22.     The Los Urabenos gang and FARC are the only groups discussed in the reports other than the two gold traders, Goldex and Republic.  Bloomberg positions these two groups as the ones involved in the "cocaine money-laundering scheme" discussed in the reports. Bloomberg's reports state and/or imply that Republic receives "drug money" from these groups to purchase illegal gold and that Republic launders the "drug money" for these groups.

**B.      Bloomberg's reports were factually inaccurate.**

23.     The facts stated and implied by Bloomberg's reports were inaccurate.  First, the Colombian Attorney General is not investigating Republic for participating in a cocaine money-laundering scheme.   On information and belief, the Colombian Attorney General is not investigating Republic for any illegal or potentially illegal activity.

24.     Second, the U.S. DEA is not investigating Republic for participating in a cocaine money-laundering scheme.  Nor is the U.S. DEA participating in any investigation with the Colombian Attorney General on that subject.  On information and belief, the U.S. DEA is not investigating Republic for any illegal or potentially illegal activity.

25.     Third, Republic is not, and has never been, involved with a cocaine money-laundering scheme.  Republic does not use, and has never used, drug money to purchase gold from Colombia or elsewhere.  Republic does not participate, and has never participated, in any money-laundering scheme involving shipments from Colombia or elsewhere.  And, Republic does not have, and has never had, a connection with Colombian groups involved in drug-related violence.

**II.     Bloomberg knew its reports were factually inaccurate or acted with reckless disregard for the truth.**

26.     Bloomberg knew its reports were factually inaccurate with respect to accusations against Republic or published its reports with reckless disregard for the truth.  First, Bloomberg knew it was misquoting and misrepresenting statements by Ortega.  On information and belief,

CASE NO. _____

Ortega did not tell Bloomberg that Republic was under investigation or that Republic participated (or may have participated) in a cocaine money-laundering scheme.

27.     Goldex and Republic, separately, filed petitions with the DIAN regarding the statements attributed to Ortega in the Bloomberg reports.  The petitions sought confirmation regarding whether Ortega made the statements.  Copies of the petitions submitted to the DIAN (with translations and without attachments) are attached as Exhibits 3 and 4.

28.     The DIAN responded to the petitions with denials that Ortega named any specific companies.  On June 18, 2014, the DIAN issued a letter to Goldex denying that Ortega identified any specific company as being the subject of the Attorney General's investigation.  Additionally, on September 2, 2014, the DIAN issued a letter to Republic denying that Ortega was the source for Bloomberg's statements about Republic.  The DIAN denied that Ortega identified any specific companies, including Republic.  Copies of these letters (with translations) are attached as Exhibits 5 and 6, respectively.

29.     Bloomberg attributed many of its statements and implications regarding Republic to Ortega.  Bloomberg did so to lend credibility to its accusations, making them appear to come from a credible source.  The DIAN letters demonstrate that Bloomberg apparently fabricated Ortega's statements regarding Republic.  Thus, on information and belief, Ortega did not make the statements attributed to him by Bloomberg.  This fact alone demonstrates that Bloomberg knew its statements were factually inaccurate.

30.     Second, Bloomberg knew the Colombian Attorney General did not confirm that it was investigating Republic.  According to the reports, the Colombian Attorney General confirmed to Bloomberg that it was investigating Goldex.  The Attorney General did not resist confirming the actual subject of its investigation.  Thus, Bloomberg knew or should have known that the Colombian Attorney General would have confirmed it was investigating Republic if, in

CASE NO. _____

fact, it was investigating Republic.  The lack of confirmation from the Attorney General told Bloomberg that Republic was not, in fact, under investigation.

31.    Third, Bloomberg knew the U.S. DEA did not confirm that it was investigating Republic.  According to the reports, Bloomberg contacted the U.S. DEA for confirmation that it was participating in an investigation into Republic.  The U.S. DEA did not provide Bloomberg confirmation.  Accordingly, Bloomberg knew it had no corroboration from either the Colombia Attorney General or U.S. DEA that an investigation of Republic was, in fact, taking place.   On information and belief, Bloomberg did not obtain corroboration from any other government source prior to publishing its reports implicating Republic.

32.    Fourth, Bloomberg knew Ortega was not in a position to have first-hand knowledge regarding any investigation by the Colombian Attorney General into Republic. Ortega did not work for the Colombian Attorney General.  Ortega worked for DIAN, which is a tax agency.  Bloomberg knew Ortega worked for DIAN, not the Attorney General.  Thus, Bloomberg knew or should have known that Ortega would not have first-hand knowledge regarding any alleged investigation by the Colombian Attorney General into Republic or the scope of such investigation.

33.    Fifth, Bloomberg knew that Republic was not being investigated by the Colombian Attorney General or U.S. DEA for participating in a "cocaine money-laundering scheme."  Bloomberg called Republic's home office in Miami prior to publishing the reports. During a subsequent conversation, Republic told Bloomberg that it was not being investigated by the Colombian Attorney General, DIAN, or U.S. DEA.  Bloomberg should have sought corroboration for its accusation after Republic's denial of an investigation. On information and belief, Bloomberg did not do so.  Instead, on information and belief, Bloomberg published its

CASE NO. _____

reports following Republic's denial without performing any additional research regarding Republic.

34.    Sixth, Bloomberg knew or should have known that Republic did not trade in illegal gold and did not use drug money to purchase gold.  Republic is a member of the Responsible Jewelry Council ("RJC").  RJC members are independently audited.  Republic is also recognized as a Gold Good Delivery Refinery by the London Bullion Market Association and patron member of the International Precious Metals Institute.  Republic's participation with these organizations is inconsistent with participating in a money-laundering scheme that involves the purchase of illegal gold with drug money.  On information and belief, Bloomberg either knew about Republic's affiliations or should have known of these affiliations as they are identified on Republic's website prior to publication of the Bloomberg reports.

35.    Seventh, Bloomberg knew or should have known that its accusations were inconsistent with Republic's corporate policy and practice.  Republic published a Gold Supply Chain Policy Statement on its website prior to publication of the Bloomberg reports.  Republic's policy details the steps it has taken to ensure that it "participat[es] and cooperat[es] in global efforts to combat money-laundering . . . and crime by ensuring that all sources of precious metals at RMC comes from legitimate, conflict free, and ethical sources."  Republic's policy also explains that it "supports efforts . . . to contribute to effective elimination of money-laundering . . . ."  Bloomberg's accusations are inconsistent with Republic's corporate policy and practice.  On information and belief, Bloomberg either knew about Republic's policy and practice with respect to money-laundering or should have known about them as they are identified on Republic's website.

CASE NO. _____

**III.   Bloomberg continued to publish reports after being informed that its reports were factually inaccurate.**

36.     Bloomberg continued to makes the reports available on its website after being told by Republic that they were factually inaccurate and causing considerable damage.

37.     Republic wrote a letter to Bloomberg on May 30, 2014, asking for a retraction of the factually inaccurate reports.  Republic explained that Bloomberg's "contention that Republic Metals is the target of an investigation by law enforcement authorities is factually inaccurate and irresponsible."  Republic also explained that "[n]o law enforcement authority – in the U.S. or elsewhere – is currently investigating Republic Metals in connection with its prior business relationship with Goldex."  A copy of the letter is attached as Exhibit 7.

38.     Republic wrote another letter to Bloomberg on June 9, 2014, again asking for a retraction of the factually inaccurate reports.  Republic explained that "Republic Metals is not a target of any investigation by law enforcement authorities" and that Bloomberg's articles falsely imply that Republic "had a substantial role in alleged unlawful conduct taking place in and around Colombia."   Republic also explained that Bloomberg's reports had "irreparably damage[d] Republic Metal's sterling business reputation and harms its business relationships."  A copy of the letter is attached as Exhibit 8.

39.     Republic wrote a final letter to Bloomberg on September 11, 2014.  Republic explained that its prior communications satisfied its pre-filing notification requirement pursuant to Fla. Stat. §770.01.  However, Republic "wanted to provide [Bloomberg] a final opportunity to reconsider Bloomberg's position regarding a retraction prior to [Republic's] initiation of a lawsuit."  Republic then listed each of Bloomberg's false statements and implications.  A copy of the letter is attached as Exhibit 9.

40.     Bloomberg refused Republic's request for a retraction notwithstanding knowing that its reports were causing considerable damage to Republic based on factually inaccurate

CASE NO. _____

statements.   Bloomberg continues to make its factually inaccurate reports available on its website.   Bloomberg apparently fabricated accusations by Ortega against Republic, lacked any factual basis for its statements about Republic, and now will not remove them despite knowing the harm it has caused Republic.

## IV. Bloomberg's factually inaccurate reports have caused considerable damage to Republic's reputation and business.

41.     Bloomberg's reports have caused considerable damage to Republic's relationships with clients, potential clients, and financial institutions.   Prior to Bloomberg's reports, these constituencies had no reason to be concerned about doing business with Republic.   Republic was not involved in any improper or illegal business practices.   Now, on information and belief, as a result of Bloomberg's reports, clients, potential clients, and financial institutions are concerned about doing business with Republic.

42.     The substantial damage caused by Bloomberg's patently false and factually inaccurate reports cannot be overstated.   One of Republic's strongest assets was its stellar reputation. Republic's reputation is one of the primary reasons it was a safe business partner for clients and potential clients and a safe investment for financial institutions.   Bloomberg attempted to take that away by publishing factually inaccurate reports regarding an investigation into Republic and Republic's involvement with a cocaine money-laundering scheme. By making these false accusations, Bloomberg has compromised Republic's relationships and ability to effectively communicate with clients, potential clients, and financial institutions.

43.     Bloomberg's reports have caused actual harm beyond reputational injury. Bloomberg's reports have cost Republic sales.   Republic's sales have been adversely impacted as a result of Bloomberg's reports.   Republic has lost business.   Some of Republic's competitors, in fact, are using Bloomberg's reports to discredit Republic and take Republic's market share.

CASE NO. _____

Bloomberg also forced Republic to divert its time and energy from running its business to addressing inquiries based on Bloomberg's factually inaccurate reports.

44.     One of the reasons Bloomberg's report caused significant damage to Republic is that readers expect factually accurate information from Bloomberg.  Bloomberg claims that it "connects influential decision makers to a dynamic network of information, people and ideas" and that its strength is "quickly and accurately delivering data, news and analytics through innovative technology."  Bloomberg presents itself as a source for readers who want well-researched facts, not speculation.  Thus, on information and belief, individuals who read Bloomberg's reports, including Republic's clients, potential clients, competitors, and financial institutions, regarding Republic understood Bloomberg to be presenting well-researched facts.

45.     The breadth of Bloomberg's audience is another reason its reports caused damage to Republic's reputation and business.  According to its website, Bloomberg has over 315,000 professional service subscriptions, over 700,000 followers on Twitter, and over 420 publications use its content.  Thus, on information and belief, Bloomberg reasonably foresaw and anticipated that its reports would be read by individuals looking for information regarding Republic and participants in the precious metal industry.

46.     Bloomberg's reports were also republished in trade journals, which exacerbated the damage caused by the reports.  For example, Bloomberg's reports were republished by Hard Assets: Metals, Energy & Mining for the Serious Investor, Mineweb, and the Lawyer Herald. On information and belief, Bloomberg reasonably foresaw and anticipated that its reports would be republished by other news organizations, particularly trade journals.  Thus, on information and belief, Bloomberg knew or should have known that participants in the precious metals industry would read its reports.

CASE NO. _____

## COUNT ONE
## (DEFAMATION)

47.      Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.      Defendant published and republished statements to third parties that were of and concerning Plaintiff and were so understood by third parties who read the publications. Defendant's statements were read by readers of Bloomberg's website, its Twitter account, and other news organizations and journals that republished Defendant's statements, including Republic's clients, potential clients, competitors, other participants in the precious mineral industry, and financial institutions doing business with Republic.

49.      In its reports, Defendant falsely stated and/or implied that (a) Republic is being investigated by the Colombian Attorney General for participating in a cocaine money-laundering scheme, (b) the U.S. DEA is assisting the Colombian Attorney General in its investigation into Republic, (c) Republic participates in a cocaine money-laundering scheme, (d) Republic purchases illegal gold from Colombia, (e) Republic uses drug money to purchase gold, and (f) Republic has connections with Colombian gangs.

50.      These statements were false because (a) Republic is not being investigated by the Colombian Attorney General for participating in a cocaine money-laundering scheme, (b) the U.S. DEA is not assisting the Colombian Attorney General in its investigation into Republic, (c) Republic does not participate in a cocaine money-laundering scheme, (d) Republic does not purchase illegal gold from Colombia, (e) Republic does not use drug money to purchase gold, and (f) Republic has no connections with Colombian gangs.

51.      Each of these false statements and implications by Defendant was unprivileged and defamatory.   Defendant accused Plaintiff of engaging in conduct that violated U.S. and

CASE NO. _____

international law and is incompatible with Plaintiff's business. Plaintiff's reputation has been injured with clients, potential clients, participants in the precious mineral industry, and financial institutions as a result of Defendant's false statements and implications.

52.     Defendant acted with actual malice. Defendant knew it was factually inaccurate to state or imply that  (a) Republic is being investigated by the Colombian Attorney General for participating in a cocaine money-laundering scheme, (b) the U.S. DEA is assisting the Colombian Attorney General in its investigation into Republic, (c) Republic participates in a cocaine money-laundering scheme, (d) Republic purchases illegal gold from Colombia, (e) Republic uses drug money to purchase gold, and (f) Republic has connections with Colombian gangs. Alternatively, Defendant acted with reckless disregard for the truth when it stated or implied these facts. Defendant had information available to it that cast substantial doubt on the accuracy of these statements and implications.

53.     Plaintiff  has suffered, and will continue to suffer, reputational harm as a direct result of Defendant's defamation. Plaintiff has also suffered actual and consequential damages, in an amount that will be proven at trial, as a direct result of Defendant's defamation, including but not limited to lost sales and the costs associated with attempting to correct the injury caused by Defendant's publications.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

    a.     Award Plaintiff actual and consequential damages in an amount to be determined at trial;

    b.     Order Defendant to retract its defamatory reports and remove them from its website and social media websites;

CASE NO. _____

c.     Award Plaintiff reasonable and necessary attorneys' fees and the costs of

this action;

d.     Award Plaintiff punitive damages; and

e.     Grant Plaintiff such other and further relief as the Court deems just and

proper.

Dated:  September 22, 2014

/s/ Dora F. Kaufman, Esq.
JUAN A. GONZALEZ, ESQ. (Florida Bar No. 375500)
jag@lgplaw.com
J. RANDOLPH LIEBLER, ESQ. (Florida Bar No. 507954)
jrl@lgplaw.com
DORA F. KAUFMAN, ESQ. (Florida Bar No. 771244)
dfk@lgplaw.com
**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130
Tel.: (305) 379-0400
Fax: (305) 379-9626

J. Erik Connolly (*pro hac vice* to be filed)
econolly@winston.com
Michael E. Bloom (*pro hac vice* to be filed)
mbloom@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Tel.: 312-558-5600
Fax: 312-558-5700

*Attorneys for Plaintiffs*

# EXHIBIT 1

Gold Trading Firms Probed in Colombian Cocaine Laundering Case

# Gold Trading Firms Probed in Colombian Cocaine Laundering Case

Published: May 23 2014 12:56:47

By Andrew Willis

May 23 (Bloomberg) -- Colombia is investigating the possible involvement of gold trading firms and a Miami refinery in a cocaine money-laundering scheme that's distorting the country's trade data, according to the tax and customs agency.

As much as $3.3 billion of gold was smuggled into Colombia in the past two years from countries including Venezuela, Panama, Mexico and Chile, said Juan Ricardo Ortega, who heads the agency known as the DIAN and is assisting an investigation started by the Attorney General's office in 2011. The contraband metal allegedly was sent via trading firms including CI Goldex SA to the U.S. and Switzerland and bought at inflated prices with drug money, he said. Goldex denies any wrongdoing.

"It's money laundering, a way of bringing back dollars," Ortega said in a May 19 interview at a Bogota restaurant where he was accompanied by bodyguards. The DIAN and the U.S. Drug Enforcement Administration are assisting in the probe, he said.

The alleged gold scheme would be part of money-laundering operations that the Colombian government's financial intelligence unit estimates at about $11 billion a year. Cracking down on illicit transactions is part of efforts to end decades of drug-related violence and boost foreign investment.

The investigation is centered on Goldex, although other companies may be involved, the Attorney General's office said in an e-mailed response. The agency is close to deciding on whether or not to charge the Medellin-based firm, it said.

Goldex is collaborating fully in the inquiry and last year voluntarily opened its offices to investigators to show that all its exports have been legitimate and that it has had no contact with illegal groups, it said in an e-mailed response.

## River Smuggling

Investigators are also looking into the possible involvement of Republic Metals Corp., a refiner in Miami known as RMC, Ortega said. The Attorney General's office didn't respond to questions about RMC's alleged purchases of contraband gold.

RMC closed all accounts with Goldex and related entities last year after raising suspicions "in accordance with its stringent and proactive compliance program," the company said in an e-mailed response to questions today. Goldex said its commercial ties with RMC were put on hold by mutual agreement.

Colombia exported 58 metric tons of gold last year and 77 tons in 2012, according to the statistics agency. More than half of that may have been smuggled into the country and booked as local production, with last year's 28 percent gold price decline tempering illegal activity this year, Ortega said.

**Bloomberg Law⁺**

© 2014 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Service

Gold Trading Firms Probed in Colombian Cocaine Laundering Case

Gold is smuggled into the Colombian jungle town of Inirida in small quantities by river from Venezuela, as well as by sea from Panama, Ortega said. A seizure in the city of Bucaramanga several years ago revealed bars stamped by Mexico, he said.

### Rebel Group

The U.S. DEA's policy is to neither confirm nor deny any ongoing investigation, Mia Ro, a media relations officer, said when asked if the DEA is collaborating with the investigation.

Colombia's Los Urabenos gang and Hernan Dario Velasquez, alias El Paisa, a commander in Colombia's largest rebel group, the Revolutionary Armed Forces of Colombia, or FARC, are among traffickers using gold to launder cocaine profit, Ortega said.

Colombian authorities say El Paisa was the architect of the 2003 bombing of Bogota's Club El Nogal that left 36 people dead. Illegal gold mining is a key source of revenue for the FARC, together with returns from the cocaine industry, according to Colombia's rural police.

As well as implementing programs to regulate the informal mining sector, the government is in talks with the FARC in Havana in a bid to end the country's five-decade civil war. The two sides reached an agreement on tackling illicit drugs on May 16, with three points on the six-point agenda still outstanding.

Related News and Information:
Most-read news on Colombia: Click here

--With assistance from Matthew Bristow in Bogota.

To contact the reporter on this story: Andrew Willis in Bogota at +57-1-313-7656 or awillis21@bloomberg.net
To contact the editors responsible for this story: James Attwood at +56-2-2487-4019 or jattwood3@bloomberg.net Carlos Caminada

© [2014] Bloomberg L.P. All rights reserved.

© 2014 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Service
// PAGE 2

Gold Trading Firms Probed in Colombian Cocaine Laundering Case

# General Information

| | |
|---|---|
| **Date & Time** | Fri May 23 2014 12:56:47 EDT |
| **Related Topics** | Business News; Environment; Most Important News; Commodities; Commodities Markets; Commodities, ex-Energy; Bloomberg News Exclusives; Gold; Gold Trading; Metals; Metals Trading; Non-Ferrous Metals; Precious Metals; Precious Metals Trading; Most Read News - All; TOP Worldwide Stories |
| **Related People** | James Attwood; Matthew Bristow; Andrew Willis; Juan Ortega; Carlos Caminada |
| **Related Companies** | CI Goldex SA; Republic Metals Corp |

© 2014 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Service

# EXHIBIT 2

# Bloomberg

# Gold Traders Investigated in Colombian Cocaine Laundering

By Andrew Willis - May 26, 2014

Colombia is investigating the possible involvement of gold trading firms and a Miami refinery in a cocaine money-laundering scheme that's distorting the country's trade data, according to the tax and customs agency.

As much as $3.3 billion of gold was smuggled into Colombia in the past two years from countries including Venezuela, Panama, Mexico and Chile, said Juan Ricardo Ortega, who heads the agency known as the DIAN and is assisting an investigation started by the Attorney General's office in 2011. The contraband metal allegedly was sent via trading firms including CI Goldex SA to the U.S. and Switzerland and bought at inflated prices with drug money, he said. Goldex denies any wrongdoing and said it doesn't export gold to Switzerland and its commercial ties with the Miami plant have been temporarily halted.

"It's money laundering, a way of bringing back dollars," Ortega said in a May 19 interview at a Bogota restaurant where he was accompanied by bodyguards. The DIAN and the U.S. Drug Enforcement Administration are assisting in the probe, he said.

The alleged gold scheme would be part of money-laundering operations that the Colombian government's financial intelligence unit estimates at about $11 billion a year. Cracking down on illicit transactions is part of efforts to end decades of drug-related violence and boost foreign investment.

## Reviewing Evidence

The investigation is centered on Goldex, although other companies may be involved, the Attorney General's office said in an e-mailed response to questions.

"The objective of the investigation is to determine if Goldex was used to undertake asset laundering transactions," the Attorney General's office said. "The Attorney General's Office is reviewing the collected evidence with a view to making a decision on whether to impute or shelve," it said.

Goldex is collaborating fully in the inquiry and last year voluntarily opened its offices to investigators to show that all its exports were legitimate and it has had no contact with any illegal groups, it said in a May 22 e-mailed response.

In a subsequent statement sent today after this article was first published, the Medellin-based company said it approached the Attorney General's Office after finding out about a preliminary probe into supposed fictitious exports that has yet to become a formal investigation. Goldex isn't under investigation for money laundering or any other crime, it said.

## Florida Refinery

Authorities are also looking into the possible involvement of Republic Metals Corp., a refiner in Miami known as RMC, Ortega said. The Attorney General's office didn't respond to questions about RMC's alleged purchases of contraband gold.

RMC closed all accounts with Goldex and related entities last year after raising suspicions "in accordance with its stringent and proactive compliance program," the company said in an e-mailed response to questions. Goldex said its business with RMC was put on hold by mutual agreement while a certification process was concluded.

Colombia exported 58 metric tons of gold last year and 77 tons in 2012, according to the statistics agency. More than half of that may have been smuggled into the country and booked as local production, with last year's 28 percent gold price decline tempering illegal activity this year, Ortega said.

Gold is smuggled into the Colombian jungle town of Inirida in small quantities by river from Venezuela, as well as by sea from Panama, Ortega said. A seizure in the city of Bucaramanga several years ago revealed bars stamped by Mexico, he said.

The U.S. DEA's policy is to neither confirm nor deny any ongoing investigation, Mia Ro, a media relations officer, said when asked if the DEA is collaborating with the investigation.

## Rebel Group

Colombia's Los Urabenos gang and Hernan Dario Velasquez, alias El Paisa, a commander in Colombia's largest rebel group, the Revolutionary Armed Forces of Colombia, or FARC, are among traffickers using gold to launder cocaine profit, Ortega said.

Colombian authorities say El Paisa was the architect of the 2003 bombing of Bogota's Club El Nogal that left 36 people dead. Illegal gold mining is a key source of revenue for the FARC, together with returns from the cocaine industry, according to Colombia's rural police.

As well as implementing programs to regulate the informal mining sector, the government is in talks with the FARC in Havana in a bid to end the country's five-decade civil war. The two sides reached an agreement on tackling illicit drugs on May 16, with three points on the six-point agenda still outstanding.

To contact the reporter on this story: Andrew Willis in Bogota at awillis21@bloomberg.net

To contact the editors responsible for this story: James Attwood at jattwood3@bloomberg.net
Carlos Caminada

©2014 BLOOMBERG L.P. ALL RIGHTS RESERVED.

# EXHIBIT 3

Bogotá D.C., 27 de mayo de 2014


Doctor
**JUAN RICARDO ORTEGA**
DIRECTOR
Dirección de Impuestos y Aduanas Nacionales - DIAN -
E.S.D.


       Ref. **Derecho de Petición / Solicitud de rectificación**


Dr. Ortega:

El pasado 23 de mayo de 2014 en la página web de la agencia internacional de noticias *Bloomberg* se hizo público el artículo titulado *Gold Traders Investigated in Colombian Cocaine Laundering* en el cual es mencionado usted como fuente directa.

El artículo en cita, desde su título (que traduce *Comercializadores de oro investigados en lavado de cocaína colombiana*) vincula a la Sociedad C.I. GOLDEX S.A. -de la cual soy propietario y Representante Legal- con actividades relacionadas con el narcotráfico, y en aquel llega a afirmarse que: *The contraband metal allegedly was sent via trading firms including CI Goldex SA to the U.S. and* __Switzerland__ *and bought at inflated prices with drug money, he said;* refiriéndose puntualmente, ya se dijo, a usted como fuente de tal información.

Pero los comentarios al parecer realizados por usted no terminan ahí, pues continúa el artículo indicando: *It's __money laundering__, a way of bringing back dollars, Ortega said in a May 19 interview at a Bogota restaurant where he was accompanied by bodyguards. The DIAN and the U.S. Drug Enforcement Administration are assisting in the probe, he said.*

Dr. Ortega, comprenderá usted no solo la sorpresa sino la enorme preocupación que ha causado en mí la lectura de ese artículo, particularmente cuando se lo tiene a usted como fuente del mismo, recordándole que en este momento mi empresa tiene pendiente con la DIAN, entidad que usted dirige, la resolución de lo que consideramos respetuosas diferencias sobre la

interpretación de algunas normas tributarias que están surtiendo el trámite legal ante las instancias competentes, por cuantía sumamente importante.

Así las cosas, y teniendo en cuenta lo expuesto, respetuosamente le solicito, con fundamento en el artículo 23 de la Constitución Política, informarme lo siguiente:

1.      ¿ Según se afirma en el artículo citado, como Director de la DIAN sostuvo usted una entrevista con el medio de comunicación *Bloomberg* el pasado 19 de mayo en un restaurante de Bogotá ?

2.      ¿ Como Director de la DIAN fue usted la fuente de la información publicada por *Bloomberg* el pasado 26 de mayo en su página de internet bajo el título *Gold Traders Investigated in Colombian Cocaine Laundering*, según se afirma en el mismo artículo?

3.      ¿ Qué autoridad o competencia le asistió para, según lo informa ese medio, como Director de la DIAN haber afirmado el 19 de mayo pasado que *El metal contrabandeado alegadamente fue enviado vía firmas comercializadoras incluyendo CI GOLDEX SA hacia los Estados Unidos y Suiza y comprado a precios inflados con dinero de la droga ...* ?

4.      ¿ En qué decisión judicial de autoridad competente se basó usted, como Director de la DIAN, para afirmar que *El metal contrabandeado alegadamente fue enviado vía firmas comercializadoras incluyendo CI GOLDEX SA hacia los Estados Unidos y Suiza y comprado a precios inflados con dinero de la droga ...* ?

5.      ¿ Qué autoridad o competencia le asistió para, según lo informa *Bloomberg*, como Director de la DIAN haber afirmado que la actividad realizada por C.I. GOLDEX S.A. *Es lavado de dinero, una forma de traer de regreso dólares ...*?

6.      ¿ En qué decisión judicial de autoridad competente se basó usted, como Director de la DIAN, para afirmar que la actividad realizada por C.I. GOLDEX S.A. *Es lavado de dinero, una forma de traer de regreso dólares ...*?

Dr. Ortega, entenderá usted las consecuencias personales y comerciales causadas por cuenta de la información que se ha publicado por *Bloomberg*, pues se están dando por ciertos y casi que probados hechos por los cuales la

Fiscalía General de la Nación, a la fecha, no ha dado inicio a acción penal alguna en mi contra, ni en contra de mis socios y/o empleados, esto bajo los presupuestos de la Ley 906 de 2004. Esta la razón que me motiva a realizar las respetuosas preguntas atrás formuladas.

Ahora bien, de tenerse que no fue usted, Director de la DIAN, la fuente de tal información, le solicito hacérmelo saber para de inmediato y hacer la solicitud de rectificación al medio de comunicación.

Para efectos de comunicaciones y/o notificaciones téngase la Calle 44 No. 80 - 94 en Medellín, Antioquia.

Cordial saludo,

**JONH ÚBER HERNÁNDEZ SANTA**
c.c. 98.529.469 de Itaguí, Antioquia.

Bogota D.C. May 27, 2014

Doctor
**JUAN RICARDO ORTEGA**
DIRECTOR
National Tax and Customs Directorate – DIAN
E.S.D. [Social State Governed by the Rule of Law]

Ref: **Right of Petition / Request for Rectification**

Dr. Ortega:

Last May 23, 2014 on the website of the international news agency *Bloomberg,* an article appeared entitled *Gold Traders Investigated in Colombian Cocaine Laundering* in which you are mentioned as a direct source.

In the article in question, since its title (which translates as *Gold Traders Investigated in Colombia Cocaine Laundering)* link to the Company C.I. GOLDEX S.A. - of which I am the proprietor and Legal Representative – with activities related to drug trafficking and in which it is stated that: *The contraband metal allegedly was sent via trading firms including CI Goldex S.A. to the U.S. and Switzerland and bought at inflated prices with drug money,* it said, referring specifically, as I have said, to you as the source of such information.

However, the comments apparently made by you do not end there, as the article continues, indicating: *It's money laundering, a way of bringing back dollars, Ortega said in a May 19 interview at a Bogota restaurant where he was accompanied by bodyguards. The DIAN and the U.S. Drug Enforcement Administration are assisting in the probe, he said.*

I'm sure you will understand, Dr. Ortega, not only the surprise but enormous concern that reading this article has caused, particularly when it has you as the source of the same, bearing in mind that right now the resolution of what we respectfully consider as

differences over the interpretation of some tax regulations are outstanding with DIAN, the entity which you direct, and which are going through legal procedures before the competent courts for highly significant sums of money.

This being the case, and taking into account what is set out here, I respectfully request, based on Article 23 of the Political Constitution, that you inform me of the following:

1.      As stated in the cited article, as Director of DIAN were you interviewed by the communications media *Bloomberg* last May 19 at a restaurant in Bogota?

2.      As Director of DIAN were you the source of the information published by *Bloomberg* last May 26 on its internet page under the title *Gold Traders Investigated in Colombian Cocaine Laundering* as stated in this same article?

3.      By what authority or competence as Director of DIAN, and according to this media information, did you state last May 19 that *The smuggled metal was allegedly sent via trading firms including CI GOLDEX to the United States and Switzerland and was bought at inflated prices with drugs money...?*

4.      On what judicial decision by a competent authority did you, as Director of DIAN, state that *The smuggled metal was allegedly sent via trading firms including CI GOLDEX SA to the United States and Switzerland and was bought at inflated prices with drugs money...?*

5.      What authority or competence did you have, according to the *Bloomberg* information, and as Director of DIAN, to state that the activity undertaken by C.I. GOLDEX S.A. *Is money laundering, a form of bringing back dollars...?*

6       On what judicial decision by a competent authority did you, as Director of DIAN, state that the activity undertaken by C.I. Goldex S.A. *Is money laundering, a form of bringing back dollars...?*


You will understand, Dr. Ortega, the personal and commercial consequences of the information that has been published by *Bloomberg* given as true and almost proven, as the

Nation's Public Prosecutor has not, to date, initiated legal action against me, or my partners and/or employees, based on Law 906 of 2004. For this reason I am asking the questions formulated above.

However, if the source of such information was not you, the Director of DIAN, I request that you immediately confirm this to me and that you rectify this with the communications media concerned.

For communications and/or notifications use Calle 44 No. 80 - 94, Medellin, Antioquia.


Kind regards,


[initials]

**JOHN ÚBER HERNÁNDEZ SANTA**

CC (*Cédula de Ciudadania,* [ID Card]) 98.529.469 of Itaguí, Antioquia.



**TRANSPERFECT**
LEGAL SOLUTIONS

City of Chicago, State of Illinois, County of Cook

I, Benjamin Hengels, hereby certify that the document **"Goldex Petition to DIAN 5-27-14"** is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English.

Benjamin Hengels

Sworn to before me this
Tuesday, September 16, 2014

Signature, Notary Public

OFFICIAL SEAL
JACKIE M. MICHALEK
Notary Public, State of Illinois
My Commission Expires
October 18, 2015

Stamp, Notary Public

THE GLOBAL SOLUTION FOR LEGAL SUPPORT

150 NORTH MICHIGAN AVENUE, 20TH FLOOR, CHICAGO, IL 60601 | T 312.578.0887 | F 312.578.0892 | WWW.TRANSPERFECTLEGAL.COM
OFFICES IN 80 CITIES WORLDWIDE

# EXHIBIT 4

COPIA

1

Bogotá D.C., 24 de julio del 2014.

DIAN NIVEL CENTRAL:   25-07-2014 03:25:53
RADICE NO.: 2014ER0117034 FOLS: ANEX: 16
DE: /MAFLA RUIZ JOSE FRANCISCO
DEP: COORD. CONTROL Y PREVENCION DE LAVADO DE ACTIVOS/OLARTE MORE
TE: DERECHO DE PETICION REPUBLIC METALS CORPORATION

Señores
Dirección de Impuestos y Aduanas Nacionales ("DIAN")
E.S.D.

C.C.
Dra. Rosa María Olarte Moreno
Jefe Coordinación y Prevención de Lavado de Activos
Dirección de Impuestos y Aduanas Nacionales - DIAN

Asunto: Derecho de Petición.

Respetado Doctor:

José Francisco Mafla Ruiz, mayor de edad, vecino y domiciliado en la ciudad de Bogotá D.C., identificado con Cédula de Ciudadanía No.79.948.242, portador de la Tarjeta Profesional No. 111.478, actuando en calidad de apoderado de REPUBLIC METALS CORPORATION, sociedad constituida en los Estados Unidos de América y legalmente representada por Jason Rubin, todo lo cual consta en el poder especial y en el certificado de existencia y representación que se adjuntan (en adelante "*Republic Metals*" o la "Compañía"), de forma respetuosa me dirijo a usted, en ejercicio del derecho fundamental de petición consagrado en el artículo 23 de la Constitución Política, para presentar la siguiente petición, previos los siguientes:

## I.   ANTECEDENTES

1. El pasado 23 de mayo de 2014, la agencia internacional de noticias *Bloomberg* publicó en su página web un artículo titulado "Comercializadores de oro investigados en lavado de cocaína colombiana" (Traducción libre del título en inglés *Gold Traders Investigated in Colombian Cocaine Laundering*)[1]. Posteriormente, el 26 de mayo de 2014, la agencia



---
[1] Anexo No. 1

2

publicó un artículo con el mismo título formulando similares imputaciones[2]. Ambos artículos se adjuntan como anexos al presente derecho de petición.

2. En los dos artículos *Republic Metals* es mencionado expresamente. En la publicación del 23 de mayo el nombre de la Compañía aparece bajo el encabezado "Contrabando por el Río"[3], y en la del 26 de mayo bajo el encabezado "Refinería de Florida"[4].

Con fundamento en los anteriores ANTECEDENTES, me permito presentar respetuosamente la siguiente

## II.   PETICIÓN

De manera respetuosa, y en los términos del artículo 23 de la Constitución Política, solicito se me dé pronta respuesta a las siguientes preguntas, por ser de su competencia:

1. ¿La DIAN está adelantando alguna investigación por lavado de activos o cualquier otra actividad relacionada que infrinja la ley colombiana de competencia de esta entidad, en la que *Republic Metals Corporation* esté involucrada o relacionada de alguna manera?

2. ¿El Doctor Juan Ricardo Ortega, en su calidad de Director de la DIAN para aquel entonces, realizó las declaraciones respecto de *Republic Metals Corporation* que son citadas por los artículos publicados por Bloomberg que se adjuntan al presente documento?

3. ¿El Doctor Juan Ricardo Ortega, o cualquier otro funcionario o exfuncionario de la DIAN, ha realizado alguna otra declaración ante cualquier medio de comunicación en relación con *Republic Metals Corporation* y/o una supuesta participación de la Compañía en actividades de lavado de activos y/o una supuesta investigación en su contra por dichas actividades?



---

[2] Anexo No. 2.
[3] Traducción libre de "River Smuggling"
[4] Traducción libre de "Florida Refinery"

3

### III.  FUNDAMENTO DE LA PETICIÓN

Esta petición se realiza en ejercicio del derecho de petición consagrado en el artículo 23 de la Constitución Política reglamentado por los artículos 13 y siguientes del Código de Procedimiento Administrativo y de lo Contencioso Administrativo, el cual señala que toda persona tiene derecho a solicitar información:

> *"Toda persona tiene derecho de presentar peticiones respetuosas a las autoridades, en los términos señalados en este Código, por motivos de interés general o particular, y a obtener pronta resolución.*
>
> *Toda actuación que inicie cualquier persona ante las autoridades implica el ejercicio del derecho de petición consagrado en el artículo 23 de la Constitución Política, sin que sea necesario invocarlo. Mediante él, entre otras actuaciones, se podrá solicitar el reconocimiento de un derecho o que se resuelva una situación jurídica, que se le preste un servicio, pedir información, consultar, examinar y requerir copias de documentos, formular consultas, quejas, denuncias y reclamos e interponer recursos.*
>
> *El ejercicio del derecho de petición es gratuito y puede realizarse sin necesidad de representación a través de abogado".* (Subrayado fuera de texto).

En adición a lo anterior, el artículo 31 del Código de Procedimiento Administrativo y de lo Contencioso Administrativo dispuso que *"[l]a falta de atención a las peticiones y a los términos para resolver, la contravención a las prohibiciones y el desconocimiento de los derechos de las personas de que trata esta Parte Primera del Código, constituirán falta gravísima para el servidor público y darán lugar a las sanciones correspondientes de acuerdo con la ley disciplinaria".*

Finalmente, y atendiendo a que la consulta es de carácter particular, amablemente solicitamos a la autoridad el tratamiento confidencial del presente derecho de petición y, en especial, de la documentación que se adjunta, conforme a lo establecido en el tercer párrafo del artículo 36 del Código del Procedimiento Administrativo y de lo Contencioso Administrativo.

### IV.  NOTIFICACIONES

Recibiré notificaciones en la Calle 70 A No. 4-41 de Bogotá.



4

## V.   ANEXOS

Sírvase tener como anexos del presente derecho de petición los siguientes documentos que se adjuntan:

1. Copia del artículo publicado por *Bloomberg* el 23 de mayo de 2014.
2. Copia del artículo publicado por *Bloomberg* el 26 de mayo de 2014 en su página web.
3. Original del poder en virtud del cual actúo, junto con el respectivo certificado de existencia y representación legal de *Republic Metals Corporation* debidamente apostillado.

Con todo respeto,

Jose Francisco Mafla Ruiz
C.C.79.948.242
T.R. 111.478 del C.S. de la J.

[hw:] *1*

Bogota D.C. July 24, 2014.

[stamp:] COPY
DIAN CENTRAL LEVEL 07-25-2014 03:23:53 p.m.
No 2014ER47034 Pages:4 Annex: 36
[illegible] /MAFLA RUIZ JOSE FRANCISCO
[illegible] CENTRAL COORDINATION AND PREVENTION OF ASSET
LAUNDERING/OLARTE MORE
[illegible] RIGHT OF PETITION REPUBLIC METALS CORPORATION

Messrs.
**National Tax and Customs Directorate ("DIAN")**
**E.S.D. [Social State Governed by the Rule of Law]**

**C.C.**
**Dr. Rosa María Olarte Moreno**
**Head of Coordination for the Prevention of Asset Laundering**
**National Tax and Customs Directorate - DIAN**

Subject: Right of Petition.

Dear, most respected Doctor:

[I], José Francisco Mafla Ruiz, of legal age, and resident and domiciled in the city of Bogota D.C., identified with Citizen Identification Card No. 79.948.242, bearer of Professional Card No. 111.478, acting in my capacity as representative of the REPUBLIC METALS CORPORATION, a company constituted in the United States of America and legally represented by Jason Rubin, all of which is recorded in the special power of attorney and in the certificate of constitution and representation that that are attached (henceforward *"Republic Metals"* or the "Company"), respectfully write to you exercising the fundamental right of petition enshrined in Article 23 of the Political Constitution, to present the following petition based on the following:

## I. BACKGROUND

1.  Last May 23, 2014, the international news agency *Bloomberg* published on its website an article entitled "Gold Traders Investigated for Colombian Cocaine Laundering" (Free translation in English *Gold Traders Investigated in Colombian Cocaine Laundering*).[1] Subsequently, on May 26,

[stamp:] [illegible]

[initials]

-------------------

[1] Annex No. 1

[hw]: *2*

2014, the agency published an article with the same title making similar accusations.[2] Both articles are attached as annexes to this right of petition.

2.    In the two articles, *Republic Metals* is expressly mentioned. In the publication on May 23 the Company's name appears under the headline "River Smuggling,"[3] and on May 26 under the headline "Florida Refinery."[4]

Based on the above BACKGROUND, permit me to respectfully present the following:

## II. PETITION

Under the terms of Article 23 of the Political Constitution , I most respectfully request that you provide me with a response to the following questions, as these are within your competence:

1.    Is DIAN progressing any investigation into asset laundering or other related activity that infringes Colombian Law and which is within its competence in respect of this entity, in which *Republic Metals Corporation* is involved or related in any way?

2.    Did Doctor Juan Ricardo Ortega, in his capacity as Director of DIAN at the time, make the statements with respect to *Republic Metals Corporation* which are cited in the articles published by Bloomberg and which are attached to this document?

3.    Did Doctor Juan Ricardo Ortega, or any other official or ex-official of DIAN make any other statement to any communications media in relation to the *Republic Metals Corporation* and/or the presumed participation of the Company in asset laundering activities and/or a presumed investigation into it for said activities?

[stamp:] [illegible]

[initials]

---

[2] Annex No. 2
[3] Free translation of "River Smuggling"
[4] Free translation of "Florida Refinery"

[hw:3]

## III. GROUNDS FOR PETITION

This petition is made exercising the right of petition enshrined within Article 23 of the Political Constitution governed by Articles 13 et al. of the Administrative and Contentious Administrative Procedures Code, which indicates that every person has the right to request information:

> *"All persons have the right to present respectful petitions to the authorities, under the terms indicates in this Code, in matters of general or particular interest, and to obtain a timely resolution.*
>
> *All acts initiated by any person with the authorities implies the exercise of a right of petition enshrined within Article 23 of the Political Constitution without necessarily invoking the same. Through this, amongst other acts, for which the recognition of a right may be requested are the resolution of a legal situation, the provision of a service, a request for information for consultation, examination and copies of documents, for the formulation of questions, grievances, formal complaints, claims and for the filing of appeals.*
>
> *Exercising the right of petition is free and may be made without need for legal representation."* (Underlining added for emphasis).

In addition to the above, Article 31 of the Administrative and Contentious Administrative Procedures Code specifies that *"ignoring petitions and the term for resolving these, contravention of prohibitions and ignorance of the rights of the persons dealt with in this Part One of the Code, shall constitute a serious failure by the public servant and shall give rise to the corresponding sanctions in accordance with disciplinary law."*

Finally, and with regard to fact that this inquiry is of particular interest, we kindly request that the authority treat this right of petition as confidential, particularly the documentation attached, in accordance with the provisions of the third paragraph of Article 36 of the Administrative and Contentious Administrative Procedures Code.

[stamp:] [illegible]

### IV. NOTIFICATIONS

[initials]

Notifications can be sent to me at Calle 70 A No. 4-41, Bogota

[hw:4]

## V. ANNEXES

Please find as annexes to this right of petition the following documents, which are attached:

1. A copy of the article published by *Bloomberg* on May 23, 2014.
2. A copy of the article published by *Bloomberg* on May 26, 2014 on its website.
3. The original power of attorney by virtue of which I act, together with respective certificate of constitution of *Republic Metals Corporation* and its legal representation, duly apostilled.

With all due respect,

[signature]
José Francisco Mafla Ruiz
C.C. (*Cédula de Ciudadania,* [ID Card]) 79.948.242
T.P. (*Tarjeta Profesional,* [Professional Card]) 111.478 of the C.S. (*Corte Suprema,* [Supreme Court]) of J. (*Justicia,* [Justice])

[stamp:] [illegible]

[initials]



**TRANSPERFECT**
LEGAL SOLUTIONS

City of Chicago, State of Illinois, County of Cook

I, Benjamin Hengels, hereby certify that the document **"Republic letter to DIAN"** is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English.

Benjamin Hengels

Sworn to before me this
Tuesday, September 16, 2014

Signature, Notary Public

OFFICIAL SEAL
JACKIE M. MICHALEK
Notary Public, State of Illinois
My Commission Expires
October 18, 2015

Stamp, Notary Public

THE GLOBAL SOLUTION FOR LEGAL SUPPORT

150 NORTH MICHIGAN AVENUE, 20TH FLOOR, CHICAGO, IL 60601 | T 312.578.0887 | F 312.578.0892 | WWW.TRANSPERFECTLEGAL.COM
OFFICES IN 80 CITIES WORLDWIDE

# EXHIBIT 5

 

www.dian.gov.co

1002001205-155



Bogotá D.C., 13 de junio de 2014.

2014 JUN 18 P 1: 48     036610

Doctor
**Jhon Úber Hernández Santa**
Gerente
**Goldex S.A**
gerencia@cigoldex.com.co
Calle 44 No. 80 – 94
Medellín - Antioquia

Ref: Respuesta a Derecho de Petición radicado el 27 de mayo de 2014

Cordial saludo doctor Hernández:

Con el presente doy respuesta a su Derecho de Petición, en el que indaga, si el Director General de la Dirección de Impuestos y Aduanas Nacionales, DIAN, doctor Juan Ricardo Ortega López, fue la fuente directa para el artículo publicado el pasado 26 de mayo en la página web de la Agencia Bloomberg, bajo el título: "Gold Traders Investigated in Colombian Laundering".

Una vez consultados los registros de la Entidad, se puede establecer que el Director General de la DIAN, efectivamente ha hablado en medios de comunicación y se ha dirigido a públicos en general, en espacios como conferencias, eventos y charlas técnicas, sobre los problemas que afectan el desarrollo económico del país; entre otros delitos como el lavado de activos, contrabando, la corrupción, la evasión tributaria; por nombrar algunos de ellas. Dichas menciones se realizaron en términos generales y no de forma particular sobre ninguna empresa.

Aclarado lo anterior, se puede afirmar que el Director General de la Dirección de Impuestos y Aduanas Nacionales, DIAN, doctor Juan Ricardo Ortega López, no fue la fuente directa, ni única para el artículo publicado el pasado 23 de mayo en la página web de la Agencia Bloomberg, bajo el título: "Gold Traders Investigated in Colombian Laundering" La información que él suministró corresponde a la temática a la que hace alusión el titular, pero fue en términos generales.

Ahora, bien, de la lectura del artículo de la referencia, no se puede inferir que el Director General de la DIAN, afirmara categóricamente que la empresa CI Goldex S.A. esté involucrada en esquemas dedicados al lavado de activos o al contrabando de oro.

  

www.dian.gov.co

La Dirección General de la DIAN, a la fecha no tiene conocimiento de fallos judiciales de carácter penal que involucren a la firma CI GOLDEX S.A.

Atentamente,

LUZ AMPARO GUERRA PEÑA
Jefe Oficina de Comunicaciones

SIN ANEXOS

[logo:] **DIAN**®     [logo:] Government of Colombia, Ministry of Finance [logo:] PROSPERITY FOR ALL

National Tax and Customs Directorate

------------------------------------------------------------------------------------------

www.dian.gov.co |

1002001205-155

Bogota D.C., June 13, 2014.

                      [stamp:] DIAN [illegible]

Doctor,
**John Úber Hernández Santa**
Manager                 [stamp:] 2014 JUN 18 P 1:48     [stamp:] 036610
**Goldex S.A.**
gerencia@cigoldex.com.co
Calle 44 No. 80 – 94
Medellín – Antioquia

Ref: Response to Right to Petition dated May 27, 2014

Dear Doctor Hernández:

I am responding to your Right to Petition, which inquires whether the Director General of the National Tax and Customs Directorate, DIAN, Doctor Juan Ricardo Ortega López, was the direct source of the article published last May 26th on the website of the Bloomberg Agency, under the title: "Gold Traders Investigated in Colombian Laundering."

On consulting the Entity's records, it can be established that the DIAN Director General has effectively spoken to communications media and to the public in general, at conferences, events and technical discussions on the problems which affect the Country's economic development, amongst others, crimes such as asset laundering, contraband, corruption and tax evasion to name but a few. Said references were made in general terms and not specifically about any company.

With the above clarified, it is confirmed that the Director General of the National Tax and Customs Directorate, DIAN, Doctor Juan Ricardo Ortega López, was not the direct nor sole source of the article published last May 23rd on the Bloomberg website under the title: "Gold Traders Investigated in Colombian Laundering." The information he supplied corresponds to the theme to which the title refers, but was in general terms.

From reading the article referred to one cannot infer that the DIAN's Director General stated categorically that the company CI Goldex S.A. is involved in schemes dedicated to asset laundering or gold smuggling.

Office of Communications
Carrera 8ª N° 6C-38 piso 4°
PBX 607 99 99 ext. 1436

[logo:] **DIAN**®          [logo:] Government of Colombia, Ministry of Finance [logo:] PROSPERITY FOR ALL

National Tax and Customs Directorate

----------------------------------------------------------------------------------------------------
www.dian.gov.co |

To date, the DIAN Directorate General has no knowledge of judicial sentences of a criminal nature that involve the firm CI Goldex S.A.


Yours sincerely,

[signature]

**LUZ AMPARO GUERRA PEÑA**                    [stamp:] NO ANNEXES
**Head of the Office of Communications**



**TRANSPERFECT**
LEGAL SOLUTIONS

City of Chicago, State of Illinois, County of Cook

I, Benjamin Hengels, hereby certify that the document **"DIAN Letter to Goldex"** is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English.

Benjamin Hengels

Sworn to before me this
Tuesday, September 16, 2014

Signature, Notary Public

OFFICIAL SEAL
JACKIE M. MICHALEK
Notary Public, State of Illinois
My Commission Expires
October 18, 2015

Stamp, Notary Public

THE GLOBAL SOLUTION FOR LEGAL SUPPORT

150 NORTH MICHIGAN AVENUE, 20TH FLOOR, CHICAGO, IL 60601 | T 312.578.0887 | F 312.578.0892 | WWW.TRANSPERFECTLEGAL.COM
OFFICES IN 80 CITIES WORLDWIDE

# EXHIBIT 6

JOSÉ FRANCISCO MAFLA RUIZ                                                  Pág. 1

  

www.dian.gov.co

Coordinación de Relatoría

Bogotá, D.C. 2 SET. 2014
100221330  0001154



No. Radicado 000S2014063321
Fecha 2014-09-03 02:41:37
SUBDIRECCIÓN DE GESTIÓN NORMATIVA
JOSE FRANCISCO MAFLA RUIZ
Folios 3

COR-000S2014063321

Señor
**JOSE FRANCISCO MAFLA RUIZ**
Apoderado
Republic Metals Corporation
Calle 70 No. 4-41
Bogotá

Radicados No. 100015980 y No. 100015981 de Agosto 1 y 13 de 2014

Cordial saludo:

En respuesta a sus peticiones de la referencia, de manera atenta le manifestamos que una vez analizado su contenido, se consideró dar traslado de las misma por razones de competencia a las señoras:

Luz Amparo Guerra Peña -Jefe Oficina de Comunicaciones
Rosa María Olarte Moreno -Jefe Coordinación de Control y Prevención de Lavado de Activos Dirección de Gestión de Fiscalización

En respuesta a lo anterior la Jefe de Oficina de Comunicaciones profirió Oficio No. 100000202-197 el 27 de Agosto de 2014, del cual remitimos copia para su conocimiento.

Con lo anterior se atiende su solicitud, conforme con las competencias otorgadas por el artículo 20 del Decreto 4048 del 22 de octubre de 2008

Atentamente,

EDGAR MIGUEL ACERO SANCHEZ
Jefe Coordinación de Relatoría(A)
Subdirección de Gestión de Normativa y Doctrina
Dirección de Gestión Jurídica

Anexo lo anunciado en: dos (2) Folios

 

www.dian.gov.co

100000202- 197
Bogotá D.C., agosto 27 de 2014



Doctor
**Oscar Ferrer Martín**
Subdirector de Gestión Normativa y Doctrina
Dirección de Gestión Jurídica
E.S.M

Ref: Respuesta radicado No.100015980 de agosto 13 de 2014 y 100015981 de agosto 01 de 2014.

Cordial saludo doctor Ferrer:

En atención a su solicitud enviada y recibida el 25 de agosto con el número 100208221, solicitando información respecto al Derecho de Petición del señor José Francisco Mafla Ruiz, quien tiene la calidad de apoderado de la empresa Republic Metals Corporation; sobre dos artículos de prensa publicados en la página Bloomberg, los pasados 23 y 26 de mayo del año en curso; respondo las preguntas de la siguiente manera:

1. ¿El doctor Juan Ricardo Ortega, en su calidad de Director de la DIAN para aquel entonces, realizó las declaraciones al respecto de Republic Metal Corporation, que son citadas por los artículos publicados por Bloomberg que se adjuntan al presente documento?

2. ¿El Director Juan Ricardo Ortega, o cualquier otro funcionario o exfuncionario de la DIAN, ha realizado alguna otra declaración ante cualquier medio de comunicación en relación con Republic Metal Corporation y/o una supuesta participación de la compañía en actividades de lavado de activos y/o una supuesta investigación en contra por dichas actividades?

Respuestas

Respecto a las publicaciones del medio de comunicación Bloomberg del pasado 23 y 26 de mayo y titulados "Gold Traders Investigated in Colombian Laundering", me permito responder; no sin antes informar que el doctor Juan Ricardo Ortega López desde el pasado 17 de julio no es funcionario público del orden nacional colombiano:

Oficina de Comunicaciones
Carrera 8ª Nº 6C -38 piso 4º
PBX 607 99 99 ext. 1436

DIAN
Dirección de Impuestos y Aduanas Nacionales

MinHacienda

PROSPERIDAD PARA TODOS

www.dian.gov.co

Respuestas 1 y 2

El doctor Ortega, en su calidad de Director General de la DIAN, para ese entonces, se refirió al medio, en términos generales a la actividad de contrabando de metal presuntamente enviado a través de firmas operadoras: *"The contraband metal allegedly was sent via trading firms"*.

Una vez consultados los registros periodísticos de la Entidad, se puede establecer que el doctor Ortega como Director General de la DIAN, efectivamente ha hablado en medios de comunicación y se ha dirigido a públicos en general, en espacios como conferencias, eventos y charlas técnicas, sobre los problemas que afectan el desarrollo económico del país; entre otros delitos como el lavado de activos, contrabando, la corrupción, la evasión tributaria; por nombrar algunos de estos problemas. Dichas menciones se realizaron en términos generales y no de forma particular sobre ninguna empresa.

Aclarado lo anterior, se infiere que el doctor Juan Ricardo Ortega López como Director General de la Dirección de Impuestos y Aduanas Nacionales, DIAN, no fue la fuente directa, ni única para los artículos publicados los pasados 23 y 26 de mayo en la página web de la Agencia Bloomberg, bajo el título: "Gold Traders Investigated in Colombian Laundering". La información suministrada corresponde a la temática a la que hace alusión el titular, pero tratada en términos generales.

Ahora, bien, de la lectura de los artículos de la referencia, periodísticamente no se puede concluir que el doctor Ortega López como Director General de la DIAN, afirmara categóricamente que la empresa Republic Metal Corporation esté involucrada en esquemas dedicados al lavado de activos o al contrabando de oro.

Atentamente,

**Luz Amparo Guerra Peña**
Jefe Oficina de Comunicaciones

Proyectó: Rubén Darío Pineda Martín

JOSE FRANCISCO MAFLA RUÍZ                                                          Page 1

[logo:] **DIAN**®        [logo:] Government of Colombia, Ministry of Finance [logo:] PROSPERITY FOR ALL

National Tax and Customs Directorate
-------------------------------------------------------------------------------------------------------------------------
                          www.dian.gov.co |

Records Coordination

Bogota, D.C.        [stamp:] -SEP 2, 2014          [stamp:] DIAN Record No. 000S2014053321
100221330           0001154                         Date 2014-09-03 02:41:37 p.m.
                                                    [illegible] LEGAL AFFAIRS SUB-DIRECTORATE
                                                    [illegible JOSÉ FRANCISCO MAFLA RUIZ
                                                                                        3 Pages
Mr.
**JOSE FRANCISCO MAFLA RUIZ**                              [barcode]
Legal Representative                                COR-000S2014053321
Republic Metals Corporation
Calle 70 No. 4-41
Bogota


Record No. 100015980 and No. 100015981 of August 1 and 13, 2014

Dear Sir:

In response to your requests as referenced, we kindly inform you that its content having been analyzed, we have transferred these to the following, for competence reasons:

Luz Amparo Guerra Peña - Head of the Office of Communications
Rosa María Olarte Moreno - Head of Coordination for Asset Laundering Control and Prevention, Inspections Management Directorate


In response to the above, the Head of the Office of Communications provided Record No. 100000202-197 on August 27, 2014, which we send as a copy for your information.

Through the above, your request has been met according to the competences granted under Article 20 of Decree 4048 of October 22, 2008.

Yours sincerely,

[signature]

**EDGAR MIGUEL ACERO SANCHEZ**
Head of Record Coordination (A)
Standards and Doctrine Sub-Directorate
Legal Affairs Directorate

Annex attached on: two (2) pages

                                                         Carrera 8° N° 6C-38 Piso 6
                                                         PBX 6079999 ext. 1691

[logo:] **DIAN**®       [logo:] Government of Colombia, Ministry of Finance [logo:] PROSPERITY FOR ALL

National Tax and Customs Directorate

----------------------------------------------------------------------------------------------------

www.dian.gov.co |

100000202-197

|  | [stamp:] *Sandra Quiroz* |
|---|---|
| Doctor | SEP 01 2014 |
| **Oscar Ferrer Martín** | Time: [hw:] *3:20 PM* |

Doctor
**Oscar Ferrer Martín**
Sub-Director of Standards and Doctrine
E.S.M. [Legal Affairs Directorate]

Ref: Response Record No. 100015980 of August 13, 2014 and 100015981 of August 01, 2014.

Dear Doctor Ferrer,:

In reference to your request sent and received on August 25th as number 100208221, requesting information with respect to the Right to Petition from Mr. José Francisco Mafla Ruiz, who represents the company Republic Metals Corporation, and two press articles published on the Bloomberg [web]site last May 23rd and 26th this year, I respond as follows:

1. Did Doctor Juan Ricardo Ortega, in his capacity as Director of DIAN, at the time make statements with respect to the Republic Metals Corporation that are cited within the articles published by Bloomberg which are attached to this document?

2. Did the Director Juan Ricardo Ortega or any other official or ex-official of DIAN make any other statement to any communications media with respect to Republic Metals Corporation and/or the presumed participation of the company in asset laundering activities and/or a presumed investigation into it for said activities?

<u>Response:</u>

With respect to the Bloomberg media communication publications of last May 23rd and 26th entitled "Gold Traders Investigated in Colombian Laundering" I am permitted to reply, but not before informing you that since last July 17, Doctor Juan Ricardo Ortega López is no longer a public official of the national Colombian administration.

[hw:] *received* [illegible] *Sept 1/2014*
[illegible]

Office of Communications
Carrera 8° N° 6C-38 piso 4°
PBX 607 99 99 ext. 1436

[logo:] **DIAN**®      [logo:] Government of Colombia, Ministry of Finance [logo:] PROSPERITY FOR ALL

National Tax and Customs Directorate

-------------------------------------------------------------------------------------------------------------------------------

www.dian.gov.co ]

Response to 1 and 2

Doctor Ortega, in his capacity as Director General of DIAN at the time, referred in general terms to the media about the metal smuggling activity presumably through trading firms: "*The contraband metal allegedly was sent via trading firms.*"

On consulting the Entity's records, it is established that Doctor Ortega, the DIAN Director General, has effectively spoken to communications media and to the public in general, at conferences, events and technical discussions on the problems that affect the Country's economic development, amongst others, crimes such as asset laundering, contraband, corruption and tax evasion to name but a few. Said references were made in general terms and not specifically about any company.

With the above clarified, it is inferred that Doctor Juan Ricardo Ortega López, the Director General of the National Tax and Customs Directorate, DIAN, was not the direct nor sole source of the articles published last May 23rd and 26th on the Bloomberg Agency website entitled: "Gold Traders Investigated in Colombian Laundering." The information he supplied corresponds to the theme to which the title refers, but was in general terms.

So, upon reading the articles referred to, one cannot conclude that Doctor Ortega López, DIAN's Director General, stated categorically that the company Republic Metals Corporation may be involved in schemes dedicated to asset laundering or gold smuggling.

Yours sincerely,

[signature]

**Luz Amparo Guerra Peña**
Head of the Office of Communications

For information: Rubén Dario Pineda Martín

Office of Communications
Carrera 8° N° 6C-38 piso 4°
PBX 607 99 99 ext. 1436

الى

ら



**TRANSPERFECT**
LEGAL SOLUTIONS

City of Chicago, State of Illinois, County of Cook

I, Benjamin Hengels, hereby certify that the document **"DIAN Letter to Republic"** is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English.

Benjamin Hengels

Sworn to before me this
Tuesday, September 16, 2014

Signature, Notary Public

OFFICIAL SEAL
JACKIE M. MICHALEK
Notary Public, State of Illinois
My Commission Expires
October 18, 2015

Stamp, Notary Public

# EXHIBIT 7



WINSTON
& STRAWN
LLP      North America   Europe   Asia

200 Park Avenue
New York, NY 10166
T +1 212 294 6700
F +1 212 294 4700

GERALD L. SHARGEL
Partner
(212) 294-2637
gshargel@winston.com

May 30, 2014

By Email (mwinkler@bloomberg.net) and Federal Express
Matthew Winkler, Editor-In-Chief
Bloomberg News
731 Lexington Avenue
New York, NY 10022

By Email (awillis21@bloomberg.net) and Federal Express
Andrew Willis, Reporter
Bloomberg News
Carrera 7, #71-21
Torre B, Piso 5, Officina 501
Bogota, Columbia

By Email (jattwood3@bloomberg.net)
James Attwood, Editor
Bloomberg News

Re:   Republic Metals Corporation

Dear Mr. Winkler:

This law firm represents Republic Metals Corporation ("RMC"). We write in response to your article titled "Gold Traders Investigated in Colombian Cocaine Laundering," published on May 26, 2014 at http://www.bloomberg.com/news/2014-05-23/gold-traders-investigated-in-colombian-cocaine-laundering.html. The facts in that article are so irresponsibly false that we are contemplating a lawsuit against your publication for defamation and tortious interference with business. In the short term, we demand an immediate retraction of the article, clarification of the correct facts, and removal of the defamatory article from your website.

Your article contains numerous false statements that, on their face, irreparably damage Republic Metals' sterling business reputation and harm the business relationships it has developed over the years. For example, you write: "Authorities are ... looking into the possible involvement of Republic Metals Corp., a refiner in Miami known as RMC[.]" Your contention that Republic Metals is the target of an investigation by law enforcement authorities is factually inaccurate and irresponsible. You either made no effort to determine whether there was a factual basis for that contention (which is reckless disregard) or you made the contention knowing it was false. Republic Metals has an excellent working relationship with law enforcement authorities in the United States and abroad, has a record of full compliance with all

# WINSTON & STRAWN

May 30, 2014
Page 2

applicable laws, rules and regulations, and is *not* the subject of any investigation. Your contention, which is defamation per se, exposes your company to liability.

Likewise, you write that Goldex's "commercial ties with the Miami plant have been temporarily halted" and that "Goldex said its business with RMC was put on hold by mutual agreement while a certification process was concluded." Both of those statements are false. Even if you received that information from Goldex directly, you clearly made no effort to confirm whether there was a factual basis for those statements. Had you done so, you would have learned that, approximately a year ago, Republic Metals proactively and unequivocally closed Goldex's account. In accordance with Republic Metals' vigilant and professional legal compliance program, RMC had been alerted to the fact that Goldex and its related entities were being looked at for potential business irregularities. Republic *immediately and unilaterally* closed all of the Goldex accounts and has not done business with Goldex or any of its related entities since. Republic was in fact the first refinery to close its accounts with Goldex based on those suspicions.

Republic Metals Corporation is one of the largest precious metals refineries in North America. It holds itself to the highest business standards, and has a state-of-the-art legal compliance program. It also has close relationships with foreign and domestic law enforcement authorities. It has spent 30 years establishing and maintaining a spotless reputation, and has recently received numerous prestigious awards and accreditations that specifically attest to RMC's strong ethical standing in the precious metals industry, including placement on the London Bullion Market Association Good Delivery List.

No law enforcement authority – in the U.S. or elsewhere – is currently investigating Republic Metals in connection with its prior business relationship with Goldex. Your article to that effect was defamatory.

If you or your legal counsel wishes to discuss this issue further, please contact me by telephone.

Very truly yours,

*Gerald Shargel /RMK*

Gerald L. Shargel

# EXHIBIT 8



**WINSTON**
**&STRAWN**
LLP          North America   Europe   Asia

<div align="right">
200 Park Avenue
New York, NY 10166
T +1 212 294 6700
F +1 212 294 4700

GERALD L. SHARGEL
Partner
(212) 294-2637
gshargel@winston.com
</div>

June 9, 2014

Randy L. Shapiro
Global Media Counsel
Bloomberg L.P.
731 Lexington Avenue
New York, NY 10022

                Re:     Republic Metals Corporation

Dear Ms. Shapiro:

       I write on behalf of Republic Metals Corporation ("RMC"), in response to your letter dated June 3, 2014.

       We stand behind our demand that the article "Gold Traders Investigated in Colombian Cocaine Laundering," published on May 26, 2014, be removed from Bloomberg's website. The article falsely implies – through context and tone – that RMC had a substantial role in alleged unlawful conduct taking place in and around Colombia. Such an implication irreparably damages Republic Metals' sterling business reputation and harms its business relationships.

       Republic Metals is a model company with regard to legal compliance, and has strong relationships with foreign and domestic law enforcement authorities. Yet somehow RMC is referenced in the article directly alongside:

- **Allegations of cocaine trafficking;**

- **Allegations of gold smuggled into Colombia from countries including Venezuela, Panama, Mexico and Chile;**

- **Reference to Colombia's Los Urabenos gang;**

- **Reference to Hernan Dario Velasquez, alias El Paisa, a FARC commander who "was the architect of the 2003 bombing of Bogota's Club El Nogal that left 36 people dead;" and**

- **Reference to drug traffickers using gold to launder cocaine profit.**

       RMC is an end refiner of precious metals. The notion that it had any role in the affairs of the Colombian government, civil strife in Colombia, the drug trafficking industry, terrorist organizations (FARC) or even the Colombian company providing raw material to its refinery (Goldex) is preposterous.



WINSTON
&STRAWN

Randy L. Shapiro
June 9, 2014
Page 2

The article falsely implies to a reasonable reader that Republic Metals has some connection to these infamous subjects. The author and editor of the article either knowingly created this implication, or did so with reckless disregard for the truth. As stated in our initial letter, doing so constitutes defamation per se.

In addition, we maintain that the article contains false statements because Republic Metals is *not* a target of any investigation by law enforcement authorities. As stated in our prior letter, no law enforcement authority – in the U.S. or elsewhere – is currently investigating Republic Metals in connection with its prior business relationship with Goldex. The article's claim to the contrary is factually inaccurate and irresponsible.

Compounding the harm to Republic Metals is the fact the original version of the article, published May 23, 2014, continues to be republished extensively by Colombian news agencies. In that version of the article, Republic Metals is first mentioned directly under the caption "River Smuggling." The article thereby implies that Republic Metals was tied to "[g]old smuggled into the Colombian jungle town of Inirida ... by river from Venezuela, as well as by sea from Panama." This insinuation is absolutely false. That the article was subsequently edited to remove the caption "River Smuggling" altogether is tacit acknowledgement that the original article contained false statements and insinuations. And, because Colombian businesses are still being regularly exposed to the original article, our legal claims for defamation and tortious interference with business remain very much alive.

I would appreciate the opportunity to discuss this with you further, at your earliest convenience.

Very truly yours,

Gerald L. Shargel
Winston & Strawn LLP

# EXHIBIT 9



WINSTON
&STRAWN
LLP     North America   Europe   Asia

35 W. Wacker Drive
Chicago, IL 60601
T +1 312 558 5600
F +1 312 558 5700

J. ERIK CONNOLLY
Partner
312-558-6339
econnolly@winston.com

<u>Via Federal Express</u>

September 11, 2014

Randy L. Shapiro
Global Media Counsel
Bloomberg L.P.
731 Lexington Avenue
New York, NY 10022

Re:   Republic Metals Corp. v. Bloomberg, L.P.

Dear Mr. Shapiro:

   I represent Republic Metals Corporation ("Republic") in connection with this matter along with Mr. Gerald Shargel. Mr. Shargel sent you letters on May 30, 2014, and June 9, 2014, demanding retraction of the articles published on May 23, 2014, and May 26, 2014, under the title "Gold Traders Investigated in Colombian Cocaine Laundering." Mr. Shargel explained that those articles contained factually inaccurate statements about our client that constituted defamation. In response, Bloomberg L.P. ("Bloomberg") refused to issue a retraction of those articles and they remain publicly available.

   Mr. Shargel's prior communications satisfy Republic's pre-filing notification and demand requirements pursuant to Fla. Stat. §770.01. However, consistent with that statute, we wanted to provide you a final opportunity to reconsider Bloomberg's position regarding a retraction prior to our initiation of a lawsuit. Bloomberg's articles state and imply several inaccurate facts regarding Republic and its business activities. *First*, Bloomberg's articles falsely state that the Colombian Attorney General is investigating Republic in a cocaine money-laundering scheme. The articles made the following factually inaccurate statements in this category:

- "Gold Traders investigated in Colombian Cocaine Laundering." The headline refers to multiple traders. Republic and CI Goldex SA ("Goldex") are the only "traders" discussed in the articles. The headline states and implies that Republic is one of the traders being investigated for cocaine laundering.

- "Colombia is investigating the possible involvement of gold trading firms and a Miami refinery in a cocaine money-laundering scheme. . ." Republic is the only Miami refinery discussed in the articles. This sentence states and implies that Republic is being investigated for participating in a cocaine money-laundering scheme.



- "Investigators are also looking into the possible involvement of Republic Metals Corp, a refiner in Miami known as RMC. . ." The only investigation discussed in the report is the investigation into a "cocaine money-laundering scheme" by the Colombian Attorney General. This sentence states and implies that Republic is being investigated for participating in that scheme.

*Second*, Bloomberg's articles falsely state that Republic is being investigated by the U.S. DEA. The articles state the cocaine money-laundering scheme involved shipments of gold to the U.S. and that "the U.S. Drug Enforcement Administration [is] assisting in the probe" by the Colombian Attorney General. Republic is the only U.S. based company discussed in the articles and one of the two companies discussed in connection with the cocaine money-laundering scheme. These sentences state and imply that the U.S. DEA is investigating Republic.

*Third*, Bloomberg's articles falsely state and imply that Republic uses drug proceeds to purchase contraband gold. The articles state that gold smuggled into Colombia "allegedly was sent via trading firms including CI Goldex SA to the U.S. and Switzerland and bought at inflated prices with drug money. . ." Republic is the only U.S. based firm in the business of purchasing gold discussed in the articles. This sentence states and implies that Republic is purchasing gold with drug money.

*Fourth*, Bloomberg's articles falsely state and imply that Republic participates in money-laundering. The articles made the following factually inaccurate statements in this category:

- "It's money-laundering, a way of bringing back dollars. . ." Republic and Goldex are the only companies discussed in the articles. This sentence states and implies that Republic is one of the companies involved in the money-laundering scheme discussed throughout the articles.

- "The alleged gold scheme would be part of money-laundering operations that the Colombian's government's financial intelligence unit estimates at about $11 billion a year." Republic and Goldex are the only companies discussed in the articles. This sentence states and implies that Republic is one of the companies involved in the money-laundering scheme discussed throughout the articles.

*Fifth*, Bloomberg's articles falsely state and imply that Republic is connected to drug-related violence in Colombia. The articles state that the Colombian Attorney General's investigation was "part of an effort to end decades of drug-related violence." The articles state that Colombia's Los Urabenos gang and the commander of the FARC "are among traffickers using gold to launder cocaine profit." And, the articles state that "illegal gold mining is a key source of revenue for the FARC, together with returns from cocaine industry." The Los Urabenos gang and FARC are the only groups discussed in the articles other than the two gold traders, Goldex and Republic. Bloomberg positions these two groups as the ones involved in the "cocaine money-laundering scheme" discussed in the articles. Bloomberg's articles state and



WINSTON
&STRAWN
LLP

imply that Republic receives "drug money" from these groups to purchase illegal gold and that Republic launders the "drug money" for these groups.

The facts stated and implied by Bloomberg's articles are inaccurate. First, the Colombian Attorney General is not investigating Republic for participating in a cocaine money-laundering scheme. On information and belief, the Colombian Attorney General is not investigating Republic for any illegal or potentially illegal activity. Second, the U.S. DEA is not investigating Republic for participating in a cocaine money-laundering scheme. Nor is the U.S. DEA participating in any investigation with the Colombian Attorney General into Republic. On information and belief, the U.S. DEA is not investigating Republic for any illegal or potentially illegal activity. Third, Republic is not, and has never been, involved with a cocaine money-laundering scheme. Republic does not use, and has never used, drug money to purchase gold from Colombia or elsewhere. Republic does not participate, and has never participated, in any money-laundering scheme involving shipments from Colombia or elsewhere. And, Republic does not have, and has never had, a connection with Colombian groups involved in drug-related violence.

Republic again demands that Bloomberg issue a retraction of these articles, including but not limited to the statements and implications identified above. Bloomberg should also ensure that the factually inaccurate articles are no longer available on its website and social media.

Sincerely,

*J. Erik Connolly*
J. Erik Connolly

JEC:sm

cc: Thomas H. Golden